UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re

American Medical Utilization
Management Corporation,

                Debtor.
-----------------------------------------------------------x

Chapter 11

Case No. 11-43573-CEC

# DECISION

APPEARANCES:

| | |
|---|---|
| Avrum J. Rosen | C. Steve Okenwa, Esq. |
| The Law Offices of Avrum J. Rosen, PLLC | C. Steve Okenwa, P.C. |
| 38 New St. | 100 Church St., 8th Fl. |
| Huntington, NY 11743 | New York, NY 10007 |
| Attorneys for the Ch. 11 Trustee | Attorneys for C. Steve Okenwa, P.C. |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of David J. Doyaga (the "Trustee"), the chapter 11 trustee of American Medical Utilization Management Corporation (the "Debtor"), to hold C. Steve Okenwa, Esq. ("Mr. Okenwa") and C. Steve Okenwa, P.C. (the "Okenwa Firm," and together with Mr. Okenwa, the "Respondents") in contempt for violating the automatic stay imposed under 11 U.S.C. § 362(a)[1] by restraining funds which the Debtor was entitled to receive from the New York State Department of Health, in an effort to collect a pre-petition claim. The Trustee seeks compensatory damages consisting of the Trustee's attorney's fees and costs, and the attorney's fees and costs incurred by the Debtor's post-petition lender, as well as punitive damages.

At the commencement of the trial held on January 16, 2013, Mr. Okenwa moved for the Court's recusal, arguing that statements made during a hearing held on November 20, 2012 showed that the Court had decided in the Trustee's favor prior to the trial. Mr. Okenwa also argues that any violation of the automatic stay was not willful, and that in any event, attorneys' fees and costs do not constitute actual damages.

Recusal is not warranted for reasons that will be discussed below. With respect to the merits of the motion, because Mr. Okenwa took no meaningful action to lift the restraint upon receiving actual notice of the Debtor's bankruptcy filing, the Respondents are liable to the Trustee for compensatory damages for violating the automatic stay. However, because the estate is not liable for the lender's attorney's fees and costs, given that the restraining notice did not constitute an event of default under the post-petition financing agreement, the Respondents are not liable for the lender's attorney's fees and costs. Because the Respondents' conduct does not

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11, U.S.C.

rise to the level of particularly egregious creditor misconduct warranting punitive damages, the Trustee's request for punitive damages is denied.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

## BACKGROUND

I.  Undisputed Facts

The following relevant facts are undisputed or are matters of which judicial notice may be taken.

On April 28, 2011, the Debtor, a healthcare provider, filed a voluntary petition under chapter 11 of the Bankruptcy Code. This was the Debtor's third bankruptcy filing.[2] Mr. Okenwa was not listed in the Debtor's schedules as a creditor.

On July 8, 2011, Adrian George, John Davis, and Shurod Brown, creditors or holders of equity interests in the Debtor, filed a joint motion for the appointment of a chapter 11 trustee. On July 22, 2011, the United States Trustee filed a motion to dismiss the case with prejudice for two years. The Debtor did not oppose either motion. On October 18, 2011, the Trustee was appointed.

---

[2] The Debtor's first chapter 11 petition was filed on January 24, 2007 and was dismissed on March 29, 2007 on the motion of the chapter 11 trustee appointed in that case. (Case No. 07-40358-CEC)  The Debtor's second chapter 11 petition was filed on August 27, 2008, and was dismissed on October 7, 2008 upon the United States Trustee's motion.  (Case No. 08-45619-CEC)

By order dated April 20, 2012, the Trustee was authorized to retain Doyaga & Shaefer as counsel pursuant to § 327. The Trustee later retained The Law Office of Avrum J. Rosen, PLLC as counsel pursuant to § 327, which was approved on June 13, 2012.

On October 23, 2012, the Trustee, by his attorney Avrum J. Rosen ("Mr. Rosen"), filed an application for an order to show cause to vacate a Subpoena Duces Tecum With Restraining Notice (the "Restraining Notice"), issued by the Respondents and served upon the Debtor and the New York State Department of Health (the "Department of Health"), to collect a post-petition judgment obtained by the Okenwa Firm against the Debtor in New York state court based upon a pre-petition debt. The Trustee also sought an order directing the Department of Health, and any other party owing funds to the Debtor, to remit the funds to the Debtor despite the Restraining Notice. The Trustee sought to hold the Respondents in contempt for failing to vacate the Restraining Notice upon receiving actual notice of the Debtor's pending bankruptcy case.

A hearing on the Trustee's application was held on October 25, 2012, at which Mr. Okenwa appeared by telephone. Mr. Okenwa did not oppose the vacatur of the Restraining Notice. That same day, the Court issued an order vacating the Restraining Notice and declaring it "void and of not effect" because it was issued post-petition for a pre-petition debt in violation of the automatic stay. (Order, ECF No. 207.) The Order also vacated the post-petition judgment obtained by the Okenwa Firm on May 3, 2012 as it applied to the Debtor, and declared it "void and of no effect." (Order, ECF No. 207.) The Order scheduled a hearing for November 20, 2012 to determine whether the Respondents should be held in contempt for violating the automatic stay, and whether monetary sanctions and attorneys' fees should be awarded.

II.     Trustee's allegations of fact

The Trustee submitted direct testimony of Mr. Rosen by affirmation in support of the motion.  In his affirmation, Mr. Rosen testified that, on October 12, 2012, the Debtor was served with the Restraining Notice.  (Am. Trial Affirmation ¶ 3, ECF No. 233; Pre-trial Stmt. at 2 ¶ 5, ECF No. 232.)  Mr. Rosen mailed a letter to Mr. Okenwa on October 12, 2012, informing him of the Debtor's bankruptcy filing and advising him of the pendency of the automatic stay.  (Application in Supp. ¶ 1, ECF No. 203; Am. Trial Affirmation ¶ 4, ECF No. 233; Pre-trial Stmt. at 2 ¶ 2, Ex. 2, ECF No. 232.)  On October 22, 2012, the Debtor's management learned that a restraining notice had also been served on the Department of Health, and that the next payment from the Department of Health notifying the Debtor of the restraint, which the Debtor needed to make payroll and to pay operating expenses, was restrained.  (Am. Trial Affirmation ¶ 5, ECF No. 233; Pre-trial Stmt. at 3 ¶ 3, ECF No. 232.)  Mr. Rosen testified that, upon learning of the letter from the Department of Health, notifying the Debtor of the restraint, on October 22, he called Mr. Okenwa to inform him that the Debtor was in bankruptcy and that the restraint violated the automatic stay, but that Mr. Okenwa refused to believe him.  (Am. Trial Affirmation ¶ 6, ECF No. 233; Pre-trial Stmt. at 3 ¶ 4, ECF No. 232.)  Mr. Rosen further testified that he asked Mr. Okenwa for his email address or fax number to send him proof of the Debtor's bankruptcy case, but Mr. Okenwa refused to provide them.  (Am. Trial Affirmation ¶ 6, ECF No. 233; Pre-trial Stmt. at 3 ¶ 4, ECF No. 232.)  Mr. Rosen testified that he informed Mr. Okenwa that the Debtor might not be able to pay its employees' payroll on October 26, 2012 unless the restraint was lifted.  (Am. Trial Affirmation ¶ 8, ECF No. 233; Pre-trial Stmt. at 3 ¶ 6, ECF No. 232; Tr.[3] 1/16/13 at 40:20-21, 41:1-6.)  Mr. Rosen further testified that he informed Mr. Okenwa that he should "do whatever research he wanted to do, and . . . get back to me at the end of the

---

[3] "Tr." refers to the transcript of the hearing held on the date indicated.

day on Monday, October 22, 2012 as to what he was doing, otherwise I would have to move by Order to Show Cause to hold him in contempt and to have the funds released." (Am. Trial Affirmation ¶ 9, ECF No. 233; Pre-trial Stmt. at 4 ¶ 9, ECF No. 232.)  Mr. Rosen testified that he next spoke to Mr. Okenwa on October 23, when Mr. Okenwa stated that he was on vacation in Florida, and "made it clear that he was not lifting the restraint, would not be back until Friday [October 26, 2012], and would take no action before that date." (Am. Trial Affirmation ¶ 11, ECF No. 233; Pre-trial Stmt. at 4 ¶ 11, ECF No. 232.)

Based upon the Respondents' refusal to take immediate action to vacate the Restraining Notice, the Trustee sought emergency relief from the Court on October 23, 2012, because "without the restraint being lifted, it is clear that the other funds due to the Debtor will be restrained and that the Debtor will probably not have sufficient funds to make payroll and meet other operating expenses." (App. in Supp. of Order to Show Cause ¶ 8, ECF No. 203.)

III.    The Respondents' allegations of fact

The Respondents submitted Mr. Okenwa's affirmation in opposition to the Trustee's motion.  In his affirmation, Mr. Okenwa testified that he was first contacted by Mr. Rosen on October 23, 2012, while he was in Florida on vacation with his twin four year old children. (Affirmation in Opp'n ¶¶ 9, 11, ECF No. 213; Pre-trial Stmt. at 8 ¶4, ECF No. 232.)  Mr. Okenwa testified that, because the Trustee's counsel "came across as pompous and arrogant," he did not believe that the Debtor was in bankruptcy. (Affirmation in Opp'n ¶ 10, ECF No. 213; Pre-trial Stmt. at 8 ¶3, ECF No. 232.)  Okenwa testified that he advised the Trustee's counsel that (1) he was on vacation; (2) he did not have any notice of the bankruptcy filing, (3) any violation was of the automatic stay unintended; and (4) he did not have access to a computer.

(Affirmation in Opp'n ¶ 11, ECF No. 213; Pre-trial Stmt. at 8 ¶4, ECF No. 232.) He further stated that he informed the Trustee's counsel that he "would be back to New York on Friday, October 26, 2012, and that upon [his] return, [he] would investigate [the Trustee's counsel's] claims, and if true, take actions to vacate the Restraining Notice." (Affirmation in Opp'n ¶ 11, ECF No. 213; Pre-trial Stmt. at 8 ¶4, ECF No. 232.) Mr. Okenwa testified that Mr. Rosen did not inform him that the restraint affected the Debtor's ability to make payroll, "thus requiring immediate action on my part." (Pre-trial Stmt. at 8 ¶4, ECF No. 232.)

Mr. Okenwa further testified that, even though he was in Florida and had told Mr. Rosen he would address the issue upon return, he contacted the Department of Health on October 24, 2012 requesting it to lift the restraint, but was told that he would need to submit a written and notarized stipulation. (Affirmation in Opp'n ¶ 12, ECF No. 213; Pre-trial Stmt. at 9 ¶4, ECF No. 232.) He intended to execute those documents upon his return to New York. (Affirmation in Opp'n ¶ 12, ECF No. 213; Pre-trial Stmt. at 9 ¶4, ECF No. 232.)

IV.    The November 20, 2012 and January 16, 2013 Hearings

On November 20, 2012, pursuant to the order issued on October 25, 2012, the Court held a hearing to determine whether the Respondents should be held in contempt for violating the automatic stay, and whether they should be held liable for the Trustee's actual damages. At the hearing, Mr. Okenwa argued that the Respondents took no action in violation of the automatic stay once he was informed of the bankruptcy filing. (Tr. 11/20/12 at 4.) Mr. Okenwa further argued that, despite the October 25, 2012 scheduling order, it "wasn't clear" to him that the November 20 hearing would be an evidentiary hearing on the contempt issue, and requested an adjournment to allow him to hire counsel and prepare. (Tr. 11/20/12 at 15-16, 18-19.) Mr. Okenwa's request was granted and the hearing was adjourned to January 16, 2013.

On January 16, 2013, as the trial was about to begin, Mr. Okenwa made an oral motion requesting that the Court recuse itself from hearing and determining the contested matters. Mr. Okenwa argued that recusal was warranted because, as reflected on the transcript from the November 20, 2012 hearing, it was apparent that Court already reached the conclusion that the Respondents willfully violated the automatic stay and that, as a result of the violation, the Trustee incurred damages. The Court reserved decision on the recusal request, and the trial proceeded. The Court reserved decision on the contempt issue at the conclusion of the trial.

## DISCUSSION

I.   Recusal is not warranted.

The Respondents argue that recusal was warranted because, prior to the commencement of the trial, the Court had already determined that the automatic stay was violated. In support of that argument, Mr. Okenwa cites to the record of the November 20, 2012 hearing and the Court's statement that the automatic stay was violated by the failure to remove the restraint after receiving notice of it, and that the attorneys' fees incurred when the Trustee was required to file the motion to vacate the restraining notice to ensure that funds were available to pay the Debtor's employees may constitute actual damages. (Tr. 11/2012 at 1-9.)

Recusal is governed by 28 U.S.C. § 455, which provides, in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>     (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

28 U.S.C. § 455(a), (b)(1). "The purpose of § 455(a) 'is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.'" Green v. N.Y.C. Health &

Hosps. Corp., 343 F. App'x 712, 713 (2d Cir. 2009) (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 865 (1988)). "A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." SEC v. Drexel Burnham Lambert Inc. (In re Drexel Burnham Lambert Inc.), 961 F.2d 1307, 1312 (2d Cir. 1988); Da Silva Moore v. Publicis Groupe, 868 F. Supp.2d 137, 150 (S.D.N.Y. 2012).

Recusal is warranted under § 455(a) when a judge's remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). The remarks must be of the nature to cause an objective, disinterested observer to question the judge's impartiality. United States v. Carlton, 534 F.3d 97, 100 (2d Cir. 2008), cert. denied 555 U.S. 1038 (2008). "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Liteky, 510 U.S. at 555. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . ." Id. In that situation, the remarks "are proper grounds for appeal, not for recusal." Id. To establish a basis for recusal, "[m]ovants must overcome a presumption of impartiality, and the burden for doing so is substantial." Da Silva Moore, 868 F. Supp.2d at 150 (quoting Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. Int'l Union, 332 F. Supp.2d 667, 670 (S.D.N.Y. 2004)). While § 455 does not impose a limitations period, the Second Circuit has held that recusal motions must be filed "'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.'" United States v. Brinkworth, 68 F.3d 633, 639 (2d Cir. 1995) (quoting Apple v. Jewish Hosp., 829 F.2d 326, 333 (2d Cir. 1987)).

The Respondents' motion for recusal must be denied in the first instance because they have not provided any reason for failing to seek recusal within a reasonable time after the November 20, 2012 hearing. Immediately after that hearing, at which Mr. Okenwa requested an adjournment so that Respondents could retain a lawyer and prepare for trial, the Court entered a scheduling order, setting an evidentiary hearing on January 16, 2013, and directing the parties to submit direct testimony and documentary evidence, and to submit a joint pre-trial order on January 11. Respondents timely filed their pre-trial submissions, but at no time raised any of the issues that are claimed to be grounds for recusal. Instead, Mr. Okenwa made an oral application for recusal as the trial was about to commence. (Tr. 1/16/13 at 15.) The oral motion for recusal also deprived the Trustee of notice and the opportunity to file opposition.

More importantly, the Respondents' motion fails on the merits. The statements made by the Court at the November 20, 2012 hearing upon which Mr. Okenwa relies - that the failure to remove a restraint is a violation of the automatic stay, and actual damages include attorneys' fees incurred in seeking to vacate the restraint - do not support the Respondents' argument that they will not be given a fair opportunity to be heard; rather, the statements are well-established principles of law. Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.), 920 F.2d 183, 187 (2d Cir. 1990) (citing Fidelity Mortg. Investors v. Camelia Builders, Inc. (In re Fidelity Mortg. Investors), 550 F.2d 47, 51, 57 (2d Cir. 1976), cert. denied, 429 U.S. 1093 (1977) (allowing imposition of reasonable attorney's fees and costs under civil contempt powers for violating the automatic stay)); Sucre v. MIC Leasing Corp. (In re Sucre), 226 B.R. 340, 347 (Bankr. S.D.N.Y. 1998) (a creditor has an affirmative duty to discontinue collection activities against a debtor). Rulings, or statements of legal principles, that are contrary to a party's position do not constitute a basis for recusal. In fact, Mr. Okenwa was told that, while the

Court's understanding was that the law did not support Mr. Okenwa's position that his failure to remove the restraint was excused by the fact that he was out of town on vacation, any case law provided by Mr. Okenwa to support his arguments would be considered. (Tr. 11/20/12 at 6.) Moreover, at the conclusion of the hearing, the matter was adjourned for 8 weeks and set down for trial, at Respondents' request, to permit them to retain counsel and to present their legal and factual arguments.

Therefore, because the statements relied upon by the Respondents as a basis for the recusal motion are statements of law, and because the November 20 hearing does not reflect "such a high degree of favoritism or antagonism as to make fair judgment impossible," recusal must be denied.

2.     <u>The Respondents are held in contempt for violation of the automatic stay.</u>

Section 362(a) provides that, subject to certain exceptions not relevant here, the filing of a bankruptcy petition operates as a stay of the following actions:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case . . . ;
>
>            *           *           *
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the [bankruptcy] case . . . ;

> (6) any act to collect, assess, or recover a claim against the debtor
> that arose before the commencement of the [bankruptcy] case . . . ;

11 U.S.C. § 362(a). Any action taken in violation of the automatic stay is void. In re Braught, 307 B.R. 399, 404 (Bankr. S.D.N.Y. 2004). Upon receiving notice of the bankruptcy case, a "creditor simply cannot sit back on its hands when its failure to act results in a stay violation," Roche v. Pep Boys, Inc. (In re Roche), 361 B.R. 615, 622 (Bankr. N.D. Ga. 2005); rather, the creditor has an affirmative duty to reverse any such action within a reasonable amount of time, Braught, 307 B.R. at 403; Sucre, 226 B.R. at 347 ("[T]he Court adopts that line of cases which hold that, upon receiving actual notice of the commencement of a bankruptcy case, a creditor has an affirmative duty under § 362 to take the necessary steps to discontinue its collection activities against the debtor.").

While an individual debtor may seek actual and punitive damages for a creditor's violation of the automatic stay pursuant to § 362(k), relief for damages to a corporate debtor resulting from violation of the automatic stay lies with the court's contempt power and § 105. Chateaugay, 920 F.2d at 186-187. To hold a party in contempt for violation of the automatic stay, the court must find "maliciousness or lack of a good faith argument and belief that the party's actions were not in violation of a bankruptcy stay." Id. at 187 (citing Crysen/Motenay Energy Co. v. Esselen Assocs. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1104 (2d Cir. 1990). See also Fidelity Mortg. Investors, 550 F.2d at 50-51, 57 (allowing imposition of costs, including reasonable attorney's fees under civil contempt powers for acts which bankruptcy judge found were done with knowledge of automatic stay and "deliberate[]" disregard of bankruptcy rules regarding requirements for relief); Drywall Tapers and Pointers of Greater N.Y., Local 1974 v. Local 530, 889 F.2d 389, 394-95 (2d Cir. 1989) (knowledge of violation and terms of injunction required to hold party in civil contempt).

It is undisputed that the Respondents did not have actual knowledge of the bankruptcy filing when the Okenwa Firm obtained the post-petition judgment against the Debtor and when the Respondents issued and served the Restraining Notice. For this reason, the Respondents cannot be held in contempt for those actions, nor does the Trustee seek to do so. However, the Respondents must be held in contempt for failing to take meaningful action to remove the restraint after receiving actual notice of the Debtor's bankruptcy case.

Mr. Okenwa acknowledges that Mr. Rosen called him after the Restraining Notice was issued and told him about the Debtor's bankruptcy filing, but states that he did not believe Mr. Rosen based upon Mr. Rosen's allegedly "pompous and arrogant" attitude. (Affirmation in Opp'n ¶ 10, ECF No. 213; Pre-trial Stmt. at 8 ¶3, ECF No. 232.) Mr. Rosen's telephone call provided the Respondents with actual notice of the Debtor's bankruptcy case and the imposition of the automatic stay, and it is irrelevant whether Mr. Okenwa believed Mr. Rosen's representations.

The Tenth Circuit reached this conclusion under similar circumstances in Johnson v. Smith (In re Johnson), 501 F.3d 1163, 1172 (10th Cir. 2007). In that case, a car dealership, without notice of the debtors' bankruptcy filing, repossessed the debtors' vehicle. Johnson, 501 F.3d at 1167. The debtors' attorney called the car dealership to inform it of the bankruptcy, but based in part upon the attorney's "abrupt and harsh" manner, the dealership's vice president "believed the telephone call was a scam designed to trick [the dealership] into returning the otherwise lawfully repossessed vehicle." Id. at 1172. The debtors then sought to obtain possession of the vehicle and to recover damages based upon the dealership's violation of § 362. Id. at 1167. The Tenth Circuit held that the counsel's telephone call provided the dealership with actual knowledge of the bankruptcy filing. Id. at 1172. The court further stated that the

dealership "had a responsibility to investigate further if it seemed that [debtor's counsel] was making false representations," and "could easily have called the clerk" to verify the filing. Id. at 1172-1173.

Here, the Respondents were given actual notice of the Debtor's bankruptcy filing when Mr. Rosen spoke with Mr. Okenwa by telephone on October 22. Although the Respondents contend that this telephone call took place on October 23, the Trustee's version of events is more credible, and is consistent with Mr. Rosen's application in support of the Trustee's emergency motion to vacate the Restraining Notice, filed on October 23, which states that the conversation took place on October 22. However, even if the conversation took place on October 23 as Mr. Okenwa contends, his failure to remove the restraint constituted a violation of the automatic stay. If he doubted whether the Debtor had filed for bankruptcy, he could have immediately called the Court to verify the filing, or he could have provided his email address to Mr. Rosen for written proof.[4] Instead, Mr. Okenwa admitted that he did not attempt to verify the filing until October 24, 2012, when he contacted a friend in New York to investigate whether the Debtor filed for bankruptcy. (Tr. 1/16/13 at 96-97.) He testified that, upon verification, he contacted the Department of Health to attempt to remove the restraint, but that he could not effectuate the removal because he did not have access to a computer or a fax in order to transmit a written and notarized stipulation. (Tr. 1/16/13 at 96-97; Affirmation in Opp'n ¶12, ECF No. 213.)

It cannot be concluded that the Respondents acted in good faith and attempted to vacate the restraining notice within a reasonable amount of time upon obtaining actual notice of the bankruptcy filing. Mr. Rosen's testimony that the Trustee needed access to the restrained funds to pay the Debtor's employees on October 26, and that he informed Mr. Okenwa of this, is

---

[4] The parties' dispute whether the New York State attorney directory listed Okenwa's email address at the time (Tr. 1/16/13 at 32-36) is irrelevant. Okenwa could have voluntarily provided his email address or fax number to Rosen to obtain written proof of the filing.

entirely credible.[5] Mr. Okenwa's decision to wait until his return from vacation on October 26 to take the necessary steps to vacate the Restraining Notice was unjustifiable.

Mr. Okenwa was not vacationing in a remote location without access to a computer or fax; he was in Florida, and he has not provided a reason why he could not have located a business center, even with his children, to take the steps necessary to lift the restraint. Mr. Okenwa could have solicited Mr. Rosen's assistance in dealing with the logistics involved in effectuating the release of the restraint, which he did not do; instead, he told Mr. Rosen that he would address the matter upon his return from vacation on October 26. (See Am. Trial Affirmation ¶ 11, ECF No. 233; Tr. 11/20/12 at 10.) In any event, it was incumbent upon Mr. Okenwa to release the lien without delay as soon as he learned of the bankruptcy and his failure to do so required the Trustee to seek an order vacating the restraint so that he could pay the employees of the Debtor on October 26, 2012. (Tr. 1/16/13 at 41, 45.) See Carlsen v. Internal Revenue Service (In re Carlsen), 63 B.R. 706, 710 (Bankr. C.D. Cal. 1986).

The Trustee seeks an award of attorneys' fees and costs incurred as a result of the Respondents' violation of the automatic stay by failing to vacate the Restraining Notice, consisting of $14,561.70 for Mr. Rosen's attorney's fees and costs, and $1,900 for the attorney's fees and costs of Melvin Reddick, Esq., counsel to the Debtor's post-petition lender. The Trustee asserts that the estate is responsible for Reddick's fees and costs pursuant to the post-petition financing agreement between the Debtor and the lender, which was approved by the

---

[5] Mr. Rosen testified that on October 22, when the Trustee learned of the restrain on funds held by the Department of Health, the Debtor did not have sufficient funds to make payroll without the restrained funds:
> [A]t the time we got the motion [sic], we did not have enough money to make payroll because you had restrained the account. I was not precedent [sic] enough to know what other money might come in from other sources on the Friday but I knew that money that we were expecting to come that we needed to make payroll and that further funds from the Department of Health up to the amount of $40,000 were going to be restrained . . . .

(Tr. 1/16/13 at 75:20-76:1.)

Court on September 14, 2012. Mr. Okenwa argues that the Trustee's attorneys' fees and costs are not recoverable because the Trustee has not established that he incurred actual damages as a result of the stay violation. Mr. Okenwa further argues that the neither the financing order nor the financing agreement require the estate to reimburse the lender for attorney's fees and costs incurred as a result of this motion.[6]

It is well-settled that attorney's fees and costs may be awarded to compensate a debtor or trustee for violations of the automatic stay. Chateaugay, 920 F.2d at 187 (citing Fidelity Mortg. Investors v. Camelia Builders, Inc., 550 F.2d 47, 51, 57 (2d Cir. 1976) (allowing imposition of reasonable attorneys fees and costs under civil contempt powers for violating the automatic stay)); Coney Island Land Co., Case No. 02-17969-DEM, 2005 Bankr. LEXIS 2909, at * 7 (Bankr. E.D.N.Y. Mar. 31, 2005). At the same time, "[c]ourts seek to guard against an 'excessively litigious approach' to violations of the automatic stay that do not cause damages in and of themselves." Id. (quoting Yarinsky v. Saratoga Springs Plastic Surgery (In re Saratoga Springs Plastic Surgery), Case No. 1:03CV896, 2005 WL 357207, at *5 n.4 (N.D.N.Y. Feb. 11, 2005). See also In re Robinson, 228 B.R. 75, 85 (Bankr. E.D.N.Y.1998) (courts are reluctant "to foster a 'cottage industry' built around satellite fee litigation").

In this case, the Trustee is entitled to recover the fees and costs that were incurred in order to vacate the Restraining Notice. Judicial intervention was required because the Trustee needed access to the restrained funds to pay the Debtor's employees on October 26, 2012. The Respondents must therefore compensate the Trustee for Mr. Rosen's reasonable fees and costs

---

[6] Okenwa also argued that he cannot be held individually liable for the actual damages because he was acting on behalf of his law firm, and that his law firm was the entity that obtained the judgment against the Debtor. This argument must be rejected; it is well-settled that an attorney can be held in contempt and individually liable for damages incurred as a result of the automatic stay. See e.g., Johns-Manville Corp. v. Doan (In re Johns-Manville Corp.), 26 B.R. 919, 921, 924, 926 (Bankr. S.D.N.Y. 1983) (creditor and counsel held in contempt and liable for compensatory damages). Conversely, the Okenwa Firm is liable for actions taken by Mr. Okenwa, who was acting in the course of his employment by the Okenwa Firm.

incurred to vacate the Restraining Notice, as well as in pursuing the motion to hold the Respondents in contempt, which is necessary to fully compensate the Trustee for the damages incurred as a result of the violation of the automatic stay. See In re Emanuel, 422 B.R. 453, 467 (Bankr. S.D.N.Y. 2010) (sanctions may include "fees incurred to research, prepare and prosecute [the] sanctions motion." (citations omitted)); New York State Nat. Org. for Women v. Terry, 952 F. Supp. 1033, 1044 (S.D.N.Y. 1997) (sanctions included attorney's fees incurred for drafting and litigating a motion for contempt).

However, attorney's fees cannot be awarded on this record. Mr. Rosen's time records include $7,425 for "anticipated" and "estimated" time for future work, such as attending the hearing and this trial. (Pre-trial Stmt. at Ex. 4, ECF No. 232.) Anticipated and estimated fees may not be awarded as actual damages. Mr. Rosen may supplement the record with time records reflecting the actual time spent in connection with this matter, and the Court will review all of Mr. Rosen's time and expense charges for reasonableness at that time.[7]

Although the Respondents are liable for Mr. Rosen's fees and costs, they are not liable for Mr. Reddick's fees and costs. The Trustee argues that the service of the Restraining Notice created a default under Paragraph 6(iii) of the post-petition financing agreement between the Debtor and the lender, which was incorporated into the Court's final order approving the financing agreement, and that the financing agreement requires the estate to pay the lender's attorney's fees and costs arising from a default under the financing agreement.

Although the financing order recites that the agreement is annexed to the order, it is not. (Final Financing Order at 2, ECF No. 195.) Even assuming that the agreement that appears on the docket as an exhibit to the Notice of Entry of the Interim Financing Order is the relevant

---

[7] Respondents objected generally to Mr. Rosen's fees and costs "to the extent that said bills are unreasonable and unnecessary." (Affirmation in Opp'n ¶ 21, ECF No. 231.)

agreement (Notice of Entry of Interim Order, ECF No. 182-3), nothing in that agreement obligates the estate to compensate the lender for attorney's fees and costs incurred in connection with this contested matter, because the Restraining Notice did not constitute a default under the terms of the financing agreement.

The financing agreement provides:

> In the event that an Event of Default continues uncured for a period of fourteen (14) days, (A) [sic] the matter shall be passed on to legal counsel to enforce all of Lender's rights associated with this Agreement and the Note pursuant to the terms of the Financing Order.
> 1. Costs. Borrower [the Debtor] shall pay to Lender on demand all reasonable and duly documented costs and expenses (including all registration fees, court costs and attorneys' fees) that Lender incurs or is required to pay under or in connection with this Agreement and/or the Note relating to the enforcement of Lender's right to the Collateral and the collection of any amounts owed by the Borrower to Lender under this Agreement or any of the Credit Documents.

Financing Agreement ¶ 5(a)(v), ECF No. 182-3.

The financing agreement defines an "Event of Default" to include, among other things:

> attachment, distraint, levy or execution of judgment shall be levied on or enforced against Borrower or its respective properties or assets which is not stayed or dismissed within sixty (60) days.

Financing Agreement ¶ 5(b)(iii), ECF No. 182-3. The Restraining Notice was issued on October 2, 2012 and was vacated on October 25, 2012. Because the Restraining Notice was vacated within 60 days of its issuance, it did not create an event of default under the financing agreement. The estate is therefore not liable for the lender's legal fees incurred in connection with this motion, and they cannot be included in the Trustee's actual damages.

The Trustee's request for punitive damages is also denied. The Trustee seeks punitive damages "to prevent an occurrence of these actions in the future." (App. in Supp. of Order to

Show Cause, ECF No. 203; Am. Trial Affirmation ¶ 18, ECF No. 233; Pre-trial Stmt. at 7 ¶ 18, ECF No. 232.)

Assuming that a bankruptcy court may impose punitive damages for a violation of the automatic stay under § 105, such an award is not warranted in this case. "[T]he purpose of punitive damage awards is to punish the [wrongdoer] and to deter him and others from similar conduct in the future." Vasbinder v. Scott, 976 F.2d 118, 121 (2d Cir.1992). "[P]unitive damages are typically awarded in cases where there is particularly egregious creditor misconduct." DiGeronimo v. Weissberg (In re DiGeronimo), 354 B.R. 625, 644 (Bankr. E.D.N.Y. 2006) (discussing punitive damages in the context of civil contempt for violating the discharge injunction under § 524). Based upon the record, it cannot be concluded that the Respondents' failure to vacate the Restraining Notice constitutes "particularly egregious creditor misconduct" warranting an award of punitive damages. Id. The Trustee has not alleged that the award of attorney's fees and costs is insufficient to compensate the estate for the Respondents' violation of the automatic stay,nor has he established that the Respondents are likely to violate the Debtor's automatic stay in the future.

## CONCLUSION

For the foregoing reasons, the Respondents are held in contempt for violating the automatic stay, and must compensate the Trustee for attorney's fees and costs incurred as a result of the violation and in connection with this motion. The Trustee's requests for reimbursement of the lender's attorney's fees and costs, and for punitive damages, are denied. A separate order will issue.



**Dated: Brooklyn, New York**
**July 2, 2013**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**